CHIEF JUSTICE GRAY,
dissenting.
¶50 I respectfully dissent from the Court‘s opinion. My two primary reasons for doing so are that the Court 1) improperly applies the “plain error” doctrine to allow Whitehorn to change his double jeopardy theory on appeal from that presented to the District Court; and 2) fails to take into account that this is a postconviction relief proceeding to which certain statutes-in addition to the time-bar statute-and case law apply.
¶51 It is important to keep in mind the procedural underpinnings of this case. Whitehorn was sentenced on convictions entered on guilty pleas in 1995 and did not appeal. He sought review of his sentence by this Court’s Sentence Review Division (SRD) and the sentence was modified. Whitehorn appealed the modification to this Court and, in *79 1996, we reversed a portion of the SRD’s modification. In 1999, after our decision in Guillaume, Whitehom moved for resentencing in the District Court in light of that decision and, while that motion remained pending, he petitioned for postconviction relief. The District Court determined the postconviction petition was timely, but concluded-under Nichols-that Whitehorn’s case was final and, as a result, Guillaume could not be applied retroactively. The present case is before us on Whitehom’s appeal from the denial of his petition for postconviction relief.
¶52 Whitehorn argues on appeal that we should reverse our earlier adoption and application of the Teague retroactivity analysis in Egelhoff and Nichols. The Court recognizes that this is a change of theory on appeal, and that our general rule is that we will not consider such issues and theories because it is unfair to the trial court. The Court then notes, and I agree, that there are exceptions to the general rule, most notably the “common law plain error” exception. The Court then applies plain error to address Whitehorn’s changed theory on appeal, ultimately overruling Nichols and subsequent cases in part, and holding the District Court erred in refusing to apply Guillaume to Whitehorn’s case. It is my view that the Court improperly applies plain error in this case.
¶53 I submit at the outset that the Court’s notion that the District Court’s inability to “overrule” Nichols somehow negates Whitehorn’s ability-and obligation-to preserve the issue that Nichols was wrongfully decided is disingenuous. Litigants frequently argue for changes in case law in district courts, as we are all aware, thereby preserving the issue for appeal. If the Court really means what it is saying-that is, that any and all arguments for a change in existing case law can be made for the first time in this Court-the Court has revolutionized the practice of law; the role of the district courts; mies, statutes and precedent requiring that issues and theories of law be raised in the trial court; and this Court’s primary role as an appellate court.
¶54 Moreover, while the Court is correct that district courts cannot “overrule” a decision by this Court and theoretically are bound by our precedents, neither of these lofty principles prevent district courts from simply disagreeing with our decisions and refusing to follow them. While such cases are-thankfully and properly-rare, we have all seen them. Indeed, one such case is currently pending before us. There, the trial court stated, in denying a motion for a new trial:
The jury did exactly what the Supreme Court said it couldn’t do in Scarborough. Either the jury or the Supreme Court is wrong.
*80 It’s not the jury.
In another recent case, a district court denied an estate’s motion for summary judgment, concluding that a statute of limitations was unconstitutional. It reached that conclusion, in part, by adopting the dissenting opinion in a case decided by this Court which mandated the opposite result. So much for the Court’s reliance on lofty principles which should, but do not always, apply!
¶55 The Court also cites to Renner, Seyferth, Parker, Finley, Hart, Weitzel, Roullier and Brown for its reliance on applying plain error here, but those cases are distinguishable. In Renner, we rejected the plain error argument of a party in a civil case, citing Finley for the proposition that plain error typically applies “to criminal cases.” Renner, ¶ 15. Similarly, in Seyferth-the Court’s implication to the contrary notwithstanding-we declined to apply plain error review to reach constitutional issues raised for the first time on appeal in a case involving a driver’s license suspension. Seyferth, 277 Mont. at 387. Finally, with regard to Parker, the only other civil case relied on by the Court, that opinion predates our lengthy and seminal clarification of the common law plain error doctrine in Finley and contains merely a bald statement without analysis that there was “ ‘plain error’ of constitutional magnitude.” Parker, 190 Mont. at 381. Flimsy grounds, indeed, for the Court’s enormous expansion of plain error here, and radically at odds with both our commitment in Finley that we would use our inherent power of common law plain error review “sparingly” and our holding therein that we may, under certain circumstances, discretionarily review claimed errors that implicate a “criminal defendant’s” constitutional rights, but will do so “only in the class of cases aforementioned.” See Finley, 276 Mont. at 137-38 (emphasis added). Given our holdings in Finley, the Court is simply wrong in stating that we have not limited common law plain error review to cases involving criminal defendants.
¶56 The remaining cases on which the Court relies are all direct appeals in criminal cases. See Finley, 276 Mont. at 129; Hart, ¶ 1; Weitzel, ¶ 1; Roullier, ¶ 1; Brown, ¶ 1. The present postconviction relief case is not a criminal case; it is a collateral attack which is civil in nature and “independent of the underlying criminal cause.” State v. Garner, 1999 MT 295, ¶ 19, 297 Mont. 89, ¶ 19, 990 P.2d 175, ¶ 19 (citations omitted). Nor is it a direct appeal in a criminal case. Thus, the cases relied on by the Court for applying plain error are distinguishable and inapplicable in the present case.
¶57 The same is true of the arguments in favor of applying plain error in direct appeals of criminal cases, namely, that “review[ing] claimed *81 errors that implicate a criminal defendant’s fundamental constitutional rights,” absent a timely objection, is necessary where failing to do so “may result in a manifest miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process.” See Finley, 276 Mont. at 137 (emphasis added). If Whitehom’s fundamental constitutional rights were implicated at any point, it occurred during the sentencing phase of his criminal case. The time to raise those matters, under the common law plain error doctrine, was on appeal from that sentencing. Whitehorn did not appeal and, in my view, he thereby waived any right to plain error consideration by this Court.
¶58 Furthermore, in the cases relied on by the Court where plain error actually was raised, the defendant raised it. See Finley, 276 Mont. at 132; Hart, ¶¶ 49-53; Brown, ¶ 9. Here, Whitehorn does not, in fact, request common law plain error review on appeal of the denial of his postconviction proceeding and the Court offers no analysis of why it is appropriate for the Court to do so sua sponte. Since we have held that an appealing criminal defendant cannot wait until his or her reply brief to raise plain error (see State v. Raugust, 2000 MT 146, ¶¶ 18-19, 300 Mont. 54, ¶¶ 18-19, 3 P.3d 115, ¶¶ 18-19 (citation omitted)), on the theory that a party can never raise new matter in a reply brief because the opposing party has no opportunity to respond, it is inconceivable to me that we intend to start down the path of raising it sua sponte, especially in light of our commitment in Finley to apply plain error sparingly. See Finley, 276 Mont. at 138.
¶59 In short, because this is a civil case and Whitehorn does not request plain error review, I submit that our general rule of refusing to consider changes in legal theory on appeal must be applied here. I dissent strenuously from the Court’s enormous broadening of the plain error doctrine in this case.
¶60 My second area of primary concern is the Court’s statement that it “is illogical ... to refuse to extend constitutional protections to citizens simply because their claims are raised by collateral review rather than by way of direct appeal.” The Court is wrong. It is entirely logical and, indeed, essential to refuse to extend the same protections to postconviction relief petitioners as to appealing criminal defendants because statutes and case law controlling postconviction proceedings require it. The Court totally fails to address these matters.
¶61 It cannot be disputed that a person who has been convicted of a criminal offense and who claims a sentence was imposed in violation of statutes or the constitution is entitled to do so via a postconviction *82 proceeding only when he or she “has no adequate remedy of appeal.” See § 46-21-101, MCA. In this case, Whitehorn had an adequate remedy of appeal of his sentence following his sentencing in 1995. Unlike the defendant in Guillaume, he simply did not avail himself of that remedy. Whitehorn did not appeal his sentence and, as a result, § 46-21-101, MCA, is an absolute bar to Whitehorn’s challenge to his sentence in this postconviction case.
¶62 Moreover, when a person has been afforded the opportunity for a direct appeal of his or her conviction, grounds for relief that “could reasonably have been raised on direct appeal may not be raised, considered, or decided in a [postconviction] proceeding....” See § 46-21-105(2), MCA. “Grounds for relief’ include “all legal... issues that... could have been raised in support of the claim for relief.” Section 46-21-105(3), MCA. Here, Whitehorn had the opportunity to appeal his sentence and could reasonably have raised in such an appeal the issue of whether the enhanced sentence for use of a weapon violated double jeopardy under the Montana Constitution. We know this to be true because the defendant in Guillaume raised the issue in his direct appeal. See Guillaume, ¶¶ 1, 2. Thus, the plain language of § 46-21-105(2), MCA, also bars Whitehorn from raising the issue in his postconviction petition and this Court from considering and deciding it.
¶63 The Court totally ignores these statutes and the barriers they present in this case. It also ignores our case law under these statutes. We apply the procedural bars in the postconviction statutes consistently. See, e.g., State v. Hanson, 1999 MT 226, ¶ 16, 296 Mont. 82, ¶ 16, 988 P.2d 299, ¶ 16 (citation omitted). We do so-and must continue to do so- to prevent the abuse of postconviction proceedings by those who would substitute those proceedings for direct appeal and in order to preserve the integrity of the trial level proceedings and direct appeal. See, e.g., Hanson, ¶ 16; Mothka v. State (1997), 281 Mont. 175, 177, 931 P.2d 1331, 1333; Kills on Top v. State (1995), 273 Mont. 32, 60, 901 P.2d 1368, 1386; Petition of Manula (1993), 263 Mont. 166, 169, 866 P.2d 1127, 1129; Petition of Evans (1991), 250 Mont. 172, 819 P.2d 156; Tecca v. McCormick (1990), 246 Mont. 317, 806 P.2d 11. We also must continue to do so because the statutes controlling postconviction relief proceedings were duly enacted by the Legislature and we must apply them by their terms (absent a successful constitutional challenge, which is not at issue in the present case).
¶64 The consequences of the Court’s decision today are vast. The integrity of both trial level proceedings and direct appeals have been *83 eviscerated. The statutes governing postconviction proceedings have been obliterated. And, finally, the preclusion of federal habeas corpus review-often predicated on our consistent application of statutory postconviction procedural bars (see Kills on Top, 273 Mont. at 59, 901 P.2d at 1386)-has been lost, to the end that the State will be forced to expend ever more resources on such claims in the federal courts after matters have been resolved by this Court, often once on appeal and once via postconviction proceedings.
¶65 I dissent.
JUSTICE RICE joins in the foregoing dissenting opinion.