No. 85-446

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

PATRICK H. CAIN,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Sixteenth Judicial District,
In and for the County of Custer,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James G. Hunt, Helena, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Dorothy McCarter, Asst. Atty. General, Helena
        Keith D. Haker, County Attorney, Miles City, Montana

---

Submitted on Briefs:  Dec. 30, 1985

Decided:  April 8, 1986

Filed: APR 8 - 1986

*Ethel M. Harrison*

---

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Appellant, Patrick Cain, was convicted of conspiracy to commit arson and attempted criminal mischief following trial before a jury in the Sixteenth Judicial District. We affirm.

The Crossroads Inn (Inn) in Miles City, Montana, was destroyed by fire on the morning of October 20, 1984. Jack Holmes, who lives near the Inn, was awakened by smoke around 4:00 that morning. After driving over to the Inn, he saw heavy smoke coming from the kitchen area. Officer Newby arrived at the Inn around 4:30 a.m. He observed that most of the flames were around the kitchen area and coming through the roof above the kitchen.

Sometime that same morning, Cain and Joseph Leser were involved in a car accident south of Miles City at the Pumpkin Creek Bridge. Officer Schiffer was notified of the accident around 4:55 a.m. by police dispatch. When he arrived, he saw a car in a ditch near the bridge. Cain was in the driver's seat, and Leser was in the passenger seat. After inquiring into the cause of the accident he drove the two men back to town. Officer Schiffer later learned that the car was registered to Joanne Cain, appellant's mother.

On October 21, 1984, Detective Uden received an anonymous tip on the Crime Stoppers network concerning the Crossroads Inn fire. Detective Uden testified the tip indicated that Rod Walter, the owner of the Inn, had hired someone to set the fire; that $8000 was the agreed upon price; and that cash registers had been removed from the Inn. He received a second Crime Stoppers tip two days later. That tip indicated that Cain and Leser had been involved in an accident near the Pumpkin Creek Bridge on the morning of the fire and that cash

2

registers and evidence from the fire had been removed from Cain's vehicle and hidden under the bridge so that the officer investigating the accident would not associate the two men with the fire.

On the basis of this information, Detective Uden and Patrolman Schiffer went to the scene of the earlier accident at the Pumpkin Creek Bridge. When they arrived they found several items of property that came from the Crossroads Inn. In the ditch near where Cain's car had been, they found cash register receipts from the Crossroads Inn, a cash register key, and plastic parts similar to the type used in the construction of cash registers. Underneath the bridge, they found fresh indentations of square corners in the ground.

Detective Uden then obtained a search warrant for Cain's car on the basis of the evidence found at the bridge and the two tips. Upon searching the car, he found cash register receipts from the Inn, a rubber stamp for a receipt and broken plastic parts.

On October 26, 1984, without realizing that there was a warrant out for his arrest, Cain voluntarily came into the police department to turn himself in. After being read his Miranda warnings, Cain admitted to burglarizing the Inn. However, he denied then, and does so now, that he had any part in setting fire to the Inn.

Joe Leser testified for the prosecution pursuant to a plea bargain agreement. According to his testimony, Cain approached him with the proposition of burning down the Inn in return for some insurance money. Leser agreed. After the Inn had closed, Cain and Leser entered the building with a key that Cain had. They took three cash registers and other items and put them in Cain's car. Then they wadded up paper

3

sacks, put them between pipes in the basement below the kitchen and lit the sacks. After the sacks began to burn, Cain kicked the kitchen door in to make it look like the Inn had been broken into.

Cain's testimony was essentially the same as Leser's except that he denied suggesting to Leser that they burn down the Inn for money, and he asserted that he never set fire to the Inn.

Appellant raises four issues for our consideration:

1. Whether testimony concerning the two Crime Stoppers tips constituted a violation of appellant's Sixth Amendment right to confront the witnesses against him.

2. Whether the Crime Stoppers tips were reliable for determining probable cause to obtain a search warrant.

3. Whether testimony concerning the tips was inadmissible hearsay, and whether its use at trial created reversible error because it was not harmless.

4. Whether the prosecutor's conduct in mentioning the tips in his opening statement and closing argument and questioning a witness as to the content of the tips breached his duty to the accused.

Because the issues center on the introduction into evidence of the Crime Stoppers tips, it is appropriate that we set out exactly what was said.

The main source of objection was the testimony given by Detective Uden on direct examination:

> Q. Did the Miles City Police Department receive a tip or tips on the Crime Stoppers network relative to the Crossroads Inn fire?
>
> A. Yes.
>
> Q. When was that tip received?

4

A. First tip was received on October 21, 1984, at approximately 12:40 p.m.

Q. What information did that tip provide?

A. That information indicated that the Crossroads Inn fire was set and that Mr. Rod Walter, the owner of the Crossroads Inn, had hired the fire to be set and that $8000 was the agreed upon price for the fire and that some cash registers or tills had been removed from the scene.

Q. Was there more than one tip?

A. Yes, sir, there was.

Q. When was the second tip?

A. The second tip was received in the late morning of October 23, 198[4].

Q. What did that tip consist of?

A. That tip indicated that Mr. Pat Cain and Mr. Joe Leser, both of Miles City, had been involved in an accident on the early morning of the fire at a location north of the Pumpkin Bridge on Highway 59 which is south of Miles City and that the cash registers and evidence from the fire had been removed from the vehicle that was involved in the accident and hidden under the Pumpkin Creek Bridge so that the highway patrolman investigating the accident wouldn't associate the two individuals with the Crossroads Inn fire.

The prosecutor also briefly mentioned the tips in his opening statement and closing argument. However, at no time during the trial did defense counsel object to references to these tips.

I

Appellant contends that the Crime Stoppers tips were hearsay and violated his Sixth Amendment right to confront the witnesses against him. Section 46-20-702, MCA, provides the appropriate standard of review for alleged constitutional violations:

5

. . . No claim alleging an error affecting jurisdictional or constitutional rights may be noticed on appeal, if the alleged error was not objected to as provided in 46-20-104, unless the defendant establishes that the error was prejudicial as to his guilt or punishment and that:

(1) the right asserted in the claim did not exist at the time of the trial and has been determined to be retroactive in its application;

(2) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the defendant or his attorney that prevented the claim from being raised and disposed of; or

(3) material and controlling facts upon which the claim is predicated were not known to the defendant or his attorney and could not have been ascertained by the exercise of reasonable diligence. [Emphasis added.]

Since there was no objection to the tips at any time during the trial, appellant must meet both requirements of the statute; i.e., he must show prejudicial error and at least one of the three statutory requirements.

Appellant does not meet any of the three requirements listed in the statute. Appellant's constitutional right to be confronted by the witnesses against him existed at the time of trial, as did the right to prevent testimony that was hearsay. Although appellant claims that testimony about the tips had the same effect as actively concealing the name of the witness since the informant was anonymous, he had ample opportunity to object to such questions before the content of the tip was testified to. Furthermore, nothing prevented appellant from raising his constitutional claims at trial by objection or motion to strike. Finally, there are no facts upon which appellant bases his claim that were not known to him at the time of trial. Since appellant has not met any of

6

the three requirements, his failure to object at trial constitutes a waiver of his constitutional claim. Section 46-20-104, MCA.

We do not decide the question whether admission of the anonymous tips into evidence violated appellant's Sixth Amendment confrontation right. Rather, we hold that by failing to raise his objection at trial, he waived the right to bring such objection on appeal. The error, if there was one, cannot be noticed because appellant does not satisfy the requirements of § 46-20-702, MCA.

The United States Supreme Court gave firm support to this view in Estelle v. Williams (1976), 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126. The defendant in that case was forced to wear identifiable prison clothing at his trial by jury, but no objection to this was ever raised. The Court recognized that it is a violation of the Fourteenth Amendment for the state to compel an accused to stand trial before a jury while wearing a prison uniform. However, by failing to raise an objection, defendant was held to have waived his constitutional claim. "The reason for this rule is clear: if the defendant has an objection, there is an obligation to call the matter to the court's attention so the trial judge will have an opportunity to remedy the situation." Estelle, 425 U.S. at 508, n. 3. The Court further recognized that "[u]nder our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." Estelle, 425 U.S. at 512. This reasoning applies with equal force in the present case.

7

The approach taken in _Estelle_ has also been taken by this Court in State v. Weinberger (1983), 665 P.2d 202, 40 St.Rep. 844. In that case, as in the present, defendant raised various objections to certain out of court statements for the first time on appeal. This Court stated:

> The District Court was never given an opportunity to rule on admission of the statements or to correct itself if admission was not proper. We will not put the trial court in error where it has not been given such a chance.

_Weinberger_, 665 P.2d at 216.

We reaffirm the approach taken in _Weinberger_. On an alleged constitutional violation where the error was not objected to at trial, a party must show prejudicial error and one of the three requirements listed in § 46-20-702, MCA, before the claim will be noticed on appeal. Since appellant did not meet this burden, we do not consider the merits of his constitutional claim.

II

Appellant contends next that the Crime Stoppers tips were not sufficiently reliable to meet the standards required for determining probable cause for a search warrant. The same problem that plagued appellant's first issue also burdens this one. No motion to suppress the evidence obtained from the search of appellant's car was ever filed, nor was any objection based on those grounds raised at trial. For the reasons discussed above, we find that appellant has waived his right to raise this issue on appeal.

We note in passing, however, that the use of anonymous tips as an element in obtaining a search warrant has been sustained by the United States Supreme Court in Illinois v.

8

Gates (1982), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, and by the Montana Supreme Court in State v. Kelly (1983), 668 P.2d 1032, 40 St.Rep. 1400, where other corroborating evidence is shown. Under the totality of the circumstances analysis, the question is simply whether, given all the facts set forth in the affidavit, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. This determination is a practical, common sense decision, not a technical, analytical litmus test. Therefore, as a general rule, we do not disapprove of the use of anonymous tips as one element in the determination of probable cause for a search warrant.

III

Appellant asserts that testimony on the content of the tips was hearsay, constituting reversible error because they were not harmless beyond a reasonable doubt. We reiterate that no objection to the tips was raised at any time during the trial. Thus, in order to prevail, appellant must demonstrate that admission of the testimony constituted plain error affecting a substantial right. Rule 103, M.R.Evid. Before we decide whether admission of the testimony constituted reversible error, we must first determine whether the tips were hearsay.

Respondent would have us believe that the description of the tips was not hearsay because it was not asserted to prove the truth of their contents; rather, it was used to explain the basis of the investigation and the issuance of the subsequent search warrant. We reject this assertion. An integral part of the State's case was proving conspiracy between appellant, Leser and Rod Walter, the owner of the

9

Inn. This theory of the case was asserted in the prosecution's opening statement. Therefore, testimony that the tip indicated that Walter had hired someone to set the fire and that appellant and Leser took evidence from the fire could only be viewed by the jury as tending to prove the truth of the assertion. We cannot reasonably require a jury of lay persons to make a distinction which is so fine that it proves difficult even for attorneys and legal scholars to make.

Respondent cites State v. White (1980), 185 Mont. 213, 605 P.2d 191, and State v. Paulson (1975), 167 Mont. 310, 538 P.2d 339, in support of its contention that the tips were not hearsay. However, both cases are distinguishable by the fact that the testimony was introduced for the purpose of showing probable cause to make an arrest without a warrant. The testimony in those cases was not introduced for the purpose of explaining the basis of an investigation. Furthermore, Detective Uden could have testified that the basis for the investigation was a Crime Stoppers tip without testifying as to the content of the tip. The description of the tips was totally unnecessary to prove respondent's asserted purpose. Therefore, we find that the tips were hearsay. However, although admission of the tips was error, because appellant failed to raise an objection to this at trial, our inquiry only goes so far as to determine whether the admission was plain error affecting substantial rights of appellant. Rule 103, M.R.Evid.

Testimony on the first tip indicated that Rod Walter had hired someone to set the fire and that cash registers had been removed from the Inn. Appellant's name was not mentioned. The second tip indicated that appellant and Leser were in an accident near the Pumpkin Creek Bridge on the

morning of the fire and that cash registers and evidence from the fire had been removed from the car and hidden.

The substance of the second tip was completely corroborated by the independent testimony of Patrolman Schiffer and Detective Uden. The same evidence was established without the testimony on the tip. Thus, testimony concerning the second tip had no prejudicial effect on appellant.

The only part of the first tip which was not directly proved was the information about Walter hiring someone to set the fire. However, testimony was given that the Crossroads Inn was in financial trouble and was losing a great deal of money. Leser testified that appellant suggested to him that they burn the Inn in return for money. Much of Leser's testimony was corroborated by other evidence. Although appellant contends that Leser is not a credible witness, the jury had an opportunity to judge his credibility and apparently believed his version of the matter over that of appellant. The fire marshall testified that the fire started in the basement and could have been set by paper bags being lit underneath the floor joints. He found very little inventory in the Inn as compared to the usual situation.

The other evidence linking appellant to the crime was overwhelming. Cash register receipts from the Inn were found in his car and in the area where his car had wrecked on the night of the fire. Appellant admitted to burglarizing the Inn at a time shortly before the fire. Therefore, appellant has failed to demonstrate that admission of part of the first tip constitutes plain error. "At most, this statement can be viewed as linkage testimony that is incriminating only in conjunction with other facts." Weinberger, 665 P.2d at 213. (Emphasis added.) This statement was not vital to the

11

State's case, and its admission into evidence was merely cumulative of all the other evidence submitted. In light of the fact that the other evidence presented was overwhelming, its admission was harmless.

## IV

Finally, appellant contends that the prosecutor breached his duty to the accused by questioning the witness about the tips and by mentioning the tips in his opening statement and closing argument. This issue was not raised at trial and will not be considered on appeal. Section 46-20-104, MCA; State v. Lemmon (1984), 692 P.2d 455, 41 St.Rep. 2359.

However, a word of caution to the prosecution is in order. We condemn the use of anonymous tips as evidence at trial. The jury has no means in which to test the reliability of the informant. Furthermore, serious questions arise as to a defendant's Sixth Amendment and confrontation rights. There was no need to introduce the content of the tips for any reason in this case. By taking such actions in the future, the prosecution runs the risk that a conviction might be overturned on appeal. Also, it is highly unlikely that in future cases defense counsel will fail to object to such testimony, which would present a different question to this Court. With this said, for the reasons stated above, the judgment of conviction must be affirmed.

/s/ J. A. Turnage
Chief Justice

12

We concur:

_John Conway Harrison_

_Justices_

Mr. Justice John C. Sheehy:

I agree with the result foregoing.

_John C. Sheehy_
Justice

Mr. Justice William E. Hunt, Sr., did not participate in this appeal.