No. 92-342

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

THE STATE OF MONTANA,

     Plaintiff and Respondent,

  v.

WILLIAM JOHN RODGERS,

     Defendant and Appellant.

APPEAL FROM:  District Court of the Twentieth Judicial District,
In and for the County of Sanders,
The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          William F. Hooks, Appellate Defender Office,
Helena, Montana

     For Respondent:

          Hon. Marc Racicot, Attorney General,
Patricia J. Jordan, Assistant Attorney General,
Helena, Montana; Robert Slomski, Sanders
County Attorney, Thompson Falls, Montana

FILED

Filed: MAR 3 0 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  November 24, 1992

Decided:  March 30, 1993

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant William John Rodgers was convicted by a jury in the Twentieth Judicial District Court, Sanders County, Montana, of felony theft for the unauthorized taking of property valued in excess of $300 from Burtch Construction with the intent to permanently deprive the owner of his property. Rodgers appeals his conviction. We affirm.

There are four issues on appeal:

1.    Was there sufficient evidence presented at trial to support a finding that Burtch owned the property that Rodgers was charged with stealing?

2.    Is the issue of prosecutorial misconduct barred by the contemporaneous objection rule?

3.    Was there an illegal search of the defendant's home?

4.    Was defendant denied his constitutional right to effective assistance of counsel?

In February 1990, Richard L. Burtch, owner and operator of Burtch Construction, and William J. Rodgers orally agreed to become partners in a secondhand store business. The two men planned to construct a new building to house the store and to locate it on Burtch Construction property. As his contribution to the partnership, Burtch furnished the land, construction materials, laborers, and money for the secondhand store building (referred to as Shop 2). Rodgers supplied his labor.

From February 1990 to April 1991, Rodgers worked on the construction of Shop 2. With Burtch's permission, Rodgers used

2

tools and supplies owned by Burtch Construction to build the store. Rodgers had a key and unlimited access to the Burtch Construction property and tools.

In late April 1991, Rodgers stopped working on the building and quit the partnership. The day after Rodgers withdrew, Burtch and his foreman went to Shop 2 and noticed there were numerous tools missing. Burtch contacted the Sanders County Sheriff's Office to report the missing items. In accordance with the sheriff's instructions, the Burtchs' began to develop a list of missing items.

In late August 1991, Burtch's daughter, Tina, went to Rodgers' home to inquire about a green washer and dryer set that she had been promised by her parents and that had been stored in Shop 2. During her visit, Tina observed a green washer and dryer set at Rodgers' residence. When asked if he knew where her parents' washer and dryer set was, Rodgers told Tina that he had disposed of it at a junk pile on Burtch Construction property. Tina and her father could not find the set in the junk pile.

In September 1991, Tina reported the missing washer and dryer to the sheriff's office. Based on Tina's information, Deputy Sheriff Perry Mock determined he had probable cause to search Rodgers' residence. The sheriff was unable to obtain a search warrant at this time because the county attorney was on vacation. Therefore, the sheriff asked Rodgers directly for permission to search his house. Rodgers gave his consent to Deputy Mock.

3

In his search of Rodgers' house, Deputy Mock discovered several items which he was able to identify as property which belonged to Burtch. When Deputy Mock opened a cabinet drawer and found a staple gun with the name "Burtch" stamped on its surface, he arrested Rodgers for theft.

Deputy Mock enlisted the assistance of Burtch and his family in an effort to identify more of their property. The Burtch family and one Burtch Construction employee arrived to help. Deputy Mock advised the group not to remove any items, but to find items allegedly belonging to them for the deputy to photograph and catalog.

The search team moved to the residence of Lloyd Mikkelson, Rodgers' brother-in-law. Mikkelson gave the group permission to search his woodshed. Deputy Mock found several tools in the shed with the name "Burtch" engraved on them. In total, Deputy Mock seized two pickup loads of tools, materials, and appliances from the Rodgers and Mikkelson properties. The value of the two loads was in excess of $300.

On November 21, 1991, Rodgers was charged by information with the crime of felony theft in violation of § 45-6-301(1)(a), MCA. At trial, Burtch, his family, Burtch Construction employees, and an appliance repairman identified many of the 60 exhibits introduced as belonging to Burtch. When Burtch could not positively identify a tool or material as his own, he emphasized that he knew he "had one like it," but that it was now missing.

4

Rodgers' son, Keith Rodgers, testified on behalf of his father at trial. During the State's closing argument, the Prosecutor characterized Keith's testimony as a deliberate lie. The Prosecutor also told the jurors that defendant Rodgers lied to their faces. Defense counsel for Rodgers did not object to the Prosecutor's comments during closing arguments. On March 3, 1992, the jury found Rodgers guilty of felony theft.

I.

Was there sufficient evidence presented at trial to support a finding that Burtch owned the property that Rodgers was charged with stealing?

On appeal, Rodgers asserts the State failed to prove that he possessed property owned by Burtch with a value greater than $300, and therefore, the State failed to prove a necessary statutory element for a felony theft charge, pursuant to § 45-6-301(6)(b), MCA. Rodgers contends that Burtch's failure to positively identify some items was evidence that Burtch was not the owner of those items. We disagree and conclude that there was sufficient evidence presented at trial to support a finding that Burtch was the owner of stolen property valued in excess of $300.

Burtch was asked if the washer and dryer exhibit at trial was his washer and dryer. Burtch was unable to recall the brand name of his washer and dryer and to say with certainty that the washer and dryer set presented at trial was his; however, he testified that he owned a washer and dryer set worth $200 and that he stored it in Shop 2 on his property prior to the time it was discovered

5

missing. An appliance repairman testified that he had worked on a washer and dryer set that was owned by Burtch and located in Shop 2. The repairman testified that the serial numbers of the washer and dryer exhibit at trial matched the serial numbers of the washer and dryer on his work order.

At trial, ten tools were introduced into evidence without objection. Each of the ten tools was engraved with the name "Burtch" on its surface and was positively identified as the property of the Burtchs' or Burtch Construction. These tools included a ratchet and torque wrench, staple gun, wheel barrow, crescent wrench, radio, screw driver, nipper or nibbler, crimping tool, tin snipers, and a 10-inch saw blade. The combined value of these tools was $175.

We conclude there is sufficient evidence in the record to establish that Burtch owned the washer and dryer and the ten tools. Together, the washer and dryer set valued at $200 and the ten tools valued at $175 were worth $375. Therefore, we conclude Burtch owned stolen property sufficient to satisfy the $300 statutory minimum for a felony theft charge. We need not discuss any of the other allegedly stolen items for purposes of affirming Rodgers' conviction.

## II.

Is the issue of prosecutorial misconduct barred by the contemporaneous objection rule?

Rodgers asserts that the State engaged in prosecutorial misconduct when the Prosecutor called the defendant and his son

6

liars during closing argument, argued facts in closing that were not in evidence, and mischaracterized Rodgers' testimony to infer Rodgers' guilt. Defense counsel for Rodgers did not object to the Prosecutor's comments during closing argument. Despite the failure to raise any objections, Rodgers asserts our Court should take notice of the Prosecutor's improper argument on appeal. Rodgers asserts such prosecutorial misconduct denied him his right to a fair trial as guaranteed by the Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution.

This Court has held that it is highly improper for an attorney, in closing argument, to characterize the testimony of a witness as lies, or to identify the party or a witness as a liar. *State v. Musgrove* (1978), 178 Mont. 162, 172, 582 P.2d 1246, 1253. We restate our strong disapproval of such conduct. However, the contemporaneous objection rule at § 46-20-104, MCA, precludes this Court from considering an alleged error unless a timely objection was made at trial or unless certain statutory criteria are met.

According to Section 46-20-104(2), MCA:

> Upon appeal from a judgment, the court may review the verdict or decision and any alleged error objected to which involves the merits or necessarily affects the judgement. Failure to make a timely objection during trial constitutes a waiver of the objection except as provided in § 46-20-701(2), MCA.

Section § 46-20-701(2), MCA, provides:

> No claim alleging an error affecting jurisdictional or constitutional rights may be noticed on appeal, if the alleged error was not objected to as provided in 46-20-104, unless the defendant establishes that the

7

error was prejudicial as to his guilt or punishment <u>and</u> <u>that</u>:

(a) the right asserted in the claim did not exist at the time of the trial and has been determined retroactive in its application;

(b) the prosecutor, the judge, or a law enforcement agency suppressed evidence from the defendant or his attorney that prevented the claim from being raised and disposed of; or

(c) material and controlling facts upon which the claim is predicated were not known to the defendant or his attorney and could not have been ascertained by the exercise of reasonable diligence. [Emphasis added.]

We conclude that Rodgers does not meet any of the three requirements listed in § 46-20-701(2)(a)-(c), MCA. Because Rodgers has not met any of these requirements, his failure to object at trial constitutes a waiver of his constitutional claim. Section 46-20-104, MCA.

Our decision in the present case is supported by the United States Supreme Court decision in *Estelle v. Williams* (1976), 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126. In *Estelle*, an accused stood trial before a jury while wearing a prison uniform. The accused made no objection during the trial regarding his having to stand trial in the prison uniform; consequently, the objection was not allowed to be raised on appeal. In *Estelle*, the United States Supreme Court explained the reasoning behind the rule that failure to raise an objection at trial constitutes waiver of one's constitutional claim. "[I]f the defendant has an objection, there is an obligation to call the matter to the court's attention so the trial

8

judge will have an opportunity to remedy the situation." *Estelle*, 425 U.S. at 508, n.3.

We have addressed the issue of a defendant raising objections for the first time on appeal in a previous Montana case. *See State v. Cain* (1986), 220 Mont. 509, 717 P.2d 15. In *Cain*, we stated: "The District Court was never given an opportunity to rule on admission of the statements or to correct itself if admission was not proper. We will not put the trial court in error where it has not been given such a chance." *Cain*, 717 P.2d at 19 (citing *State v. Weinberger* (1983), 204 Mont. 278, 304, 665 P.2d 202, 216).

Rodgers urges this Court to exercise the discretionary powers of the "plain error doctrine" to prevent a manifest injustice in this case. We have stated that the power of discretionary review is only to be used in exceptional cases. *State v. Voegele* (1990), 243 Mont. 222, 224, 793 P.2d 832, 834.

We have refused to invoke the plain error doctrine in previous cases in Montana when objections to a prosecutor's closing arguments were made for the first time on appeal. *See State v. Laverdure* (1990), 241 Mont. 135, 785 P.2d 718; *State v. Smith* (1988), 232 Mont. 156, 755 P.2d 569; *State v. Pease* (1986), 222 Mont. 455, 724 P.2d 153. Although we do not foreclose the option to invoke the plain error doctrine in a future case involving prosecutorial misconduct, we decline to invoke the doctrine under the circumstances of this case.

9

III.

Was there an illegal search of the defendant's home?

Rodgers contends that the search of his home was illegal. He contends that the voluntary consent form which he signed only granted permission for Deputy Mock to search his home, and that it did not extend to the Burtch family and their employees who assisted Deputy Mock in the search. Rodgers asserts that the search violated his Fourth Amendment right to be free from unreasonable searches and that the search violated his right of privacy under Article II, Section 10, of the Montana Constitution.

We hold that the search of Rodgers' home was legal and was not in violation of either constitutional provision. Although the consent form provides that Deputy Mock was authorized to search Rodgers' premises, it does not prohibit Deputy Mock, either expressly or by implication, from requesting assistance in the search. We conclude that when Rodgers gave consent to Deputy Mock to search his home, Rodgers waived any reasonable expectation of privacy in his home, including any limitation on the authority of Deputy Mock to request assistance in the search of Rodgers' home. See *State v. Lerch* (Or. Ct. App. 1983), 666 P.2d 840, 845, *aff'd*, (Or. 1984) 677 P.2d 678.

In a previous Montana case, *State v. Yoss* (1965), 146 Mont. 508, 409 P.2d 452, the owners of burglarized property accompanied and assisted the police in the search for their possessions, despite the fact that they were not listed on defendant's voluntary consent

10

form as parties who were given permission to search his premises. We held that the presence of the owners did not make the search illegal in the absence of a showing of any prejudice to the defendant. We explained in *Yoss*:

> We find no merit to defendant's contention that the fact [the owners] Mr. and Mrs. Maupin accompanied the officers at the time of the search, but were not listed on the voluntary statement given by him[,] would make the search illegal. There is no showing of any prejudice arising from their being present.

*Yoss*, 409 P.2d at 455.

Similarly, there was no prejudice to Rodgers when the Burtch family and a Burtch Construction employee assisted Deputy Mock in identifying stolen items on Rodgers' premises. We conclude that the search was not illegal.

## IV.

Was defendant denied his constitutional right to effective assistance of counsel?

Based on his assertion that the search of his home was illegal, Rodgers contends that his defense counsel's failure to move to suppress the evidence seized from the search denied him effective assistance of counsel. We conclude that because the search was legal, defense counsel's failure to object to the items seized at the search is of no consequence.

When evaluating a claim of ineffective assistance of counsel, this Court applies the two-pronged test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

First, counsel's performance must be deficient. To assess deficient performance, this Court employs the "'reasonably effective assistance' test of whether a defendant's counsel acted within the range of competence demanded of attorneys in criminal cases." Second, counsel's deficient performance must have so prejudiced the defendant as to deprive the defendant of a fair trial. The standard for evaluating prejudice is whether a reasonable probability exists that but for counsel's deficient performance, the trial's outcome would have been different. [Citations omitted.]

*State v. Coates* (1990), 241 Mont. 331, 337, 786 P.2d 1182, 1185.

We hold that the second part of the test set forth in *Strickland* is not satisfied in this case. If defense counsel had moved to suppress the evidence seized from the search of Rodgers' home (as Rodgers suggests he should have), the motion would not have changed the outcome of the case. Because the search was legal, the fruits of the search would have been allowed into evidence over the objection of defense counsel, and the result would have been the same. Rodgers has not shown that he was prejudiced by his defense counsel's failure to object to the evidence seized during the legal search. Therefore, we conclude that he was not denied effective assistance of counsel. The judgment of the District Court is affirmed.

_____
Justice

12

We concur:

_____
Chief Justice

_____
John Conway Harrison

_____

_____
William E. Hunt Sr.
Justices

13