DA 06-0565

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 274

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

CLYDE WILLIAM HAYDEN, SR.

        Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fifth Judicial District,<br>In and For the County of Beaverhead, Cause No. DC 05-3061<br>Honorable Loren Tucker, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Shannon McDonald, Assistant
            Appellate Defender, Helena, Montana

      For Appellee:

            Hon. Mike McGrath, Attorney General; C. Mark Fowler, Assistant Attorney
            General, Helena, Montana

            Marvin McCann, Beaverhead County Attorney, Dillon, Montana

                  Submitted on Briefs:  September 12, 2007

                       Decided:  August 5, 2008

Filed:

                        _____
                             Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Clyde Hayden was convicted in the Fifth Judicial District Court, Beaverhead County, of felony possession of methamphetamine; misdemeanor possession of drug paraphernalia; and misdemeanor partner/family member assault.  He appeals his conviction.

¶2     Hayden raises numerous issues.  However, as we reverse and remand for a retrial we discuss only two issues, as follows:

¶3     Issue 1:  Did the District Court err by not striking DPHHS social worker Elizabeth Foster's testimony that Hayden had a positive urinalysis test for methamphetamine and by not giving an instruction that such testimony must be disregarded?

¶4     Issue 2:  Was it plain error to admit testimony that witnesses were telling the truth in their initial statements; and did the prosecutor commit plain error in his statements concerning witness credibility and his opinion of the quality of police work?

## BACKGROUND

¶5     Hayden's teenage son, Clyde "Sonny" Hayden, Jr. (Sonny), alleged that Hayden assaulted him on March 20, 2005.  Sonny claimed that he and Hayden were arguing at home about Hayden's methamphetamine use and about Sonny's drinking alcohol.  He reported that Hayden pinned him down on the couch and slammed him into the wall.  He also stated that Hayden punched him in the face while they were later driving to the home of Hayden's brother, Albert Hayden (Albert).  Sonny went on to report that at Albert's home, Hayden slammed him into the front of a truck, dragged him into the truck, and then grabbed him and tried to pull him back out through the window of the truck.

¶6     The alleged abuse was reported by Sonny to a DPHHS social worker, Elizabeth Foster (Foster).  He was also interviewed by Detective Jay Hansen (Hansen) and made the same

allegations. Hansen took several pictures of Sonny that showed numerous bruises and abrasions on his face and arms. Sonny told Hansen that his father had methamphetamine and drug paraphernalia in their house, and he described where it might be found. Hansen also interviewed Albert, one of several witnesses to the incident, and Albert's statement corroborated Sonny's version of events.

¶7 Hayden was arrested for the assault on Sonny. The police obtained a search warrant and conducted a search of Hayden's residence. The search revealed various items of drug paraphernalia and methamphetamine. On April 5, 2005, the State charged Hayden with felony drug possession, in violation of § 45-9-102, MCA, misdemeanor possession of drug paraphernalia, in violation of § 45-10-103, MCA, and misdemeanor partner/family member assault in violation of § 45-5-206, MCA.

¶8 Hayden pled not guilty to all charges. A jury trial was held in January 2006. During his opening statement, County Attorney, Marvin McCann (McCann) stated that the State anticipated Hayden's defense would be that Sonny had planted the drugs in the house. Hayden's counsel began his opening statement by confirming that there was a conflict between Sonny and Hayden concerning drug use. He confirmed that the defense would be that Sonny had planted the drugs in order to get Hayden in trouble, and that it was Sonny, not Hayden, who possessed drug paraphernalia.

¶9 The State called several witnesses, including Foster, Hansen, Albert, and Sonny. Albert and Sonny both recanted the version of events they had given at the time of the incident. Albert testified that his view was blocked and he did not see everything that happened. He also testified at trial that he saw nothing to indicate that Hayden was abusive

3

to Sonny. Likewise, Sonny stated that Hayden had not assaulted him, but that he, Sonny, was out of line and his father was merely trying to discipline him and get him under control. He stated that he had lied in his earlier report of the incident just to get his father in trouble.

¶10 The social worker, Foster, testified about the report of Hayden's assault on Sonny and the injuries to Sonny she observed near the time of the incident. She also stated that Sonny had told her the reason for the altercation was Hayden's drug use. On cross-examination, Hayden's counsel questioned Foster about her former and current involvement with the family and about a former instance when Sonny had been removed from the home by DPHHS. Defense counsel also raised the fact that Hayden had undertaken a drug treatment program in 2004. He asked Foster whether Hayden had completed the program, and she stated that she thought he had completed the program but did not know if he had graduated.

¶11 On re-direct examination of Foster, she testified that the treatment plan for the family required Hayden to undergo chemical dependency treatment and testing under her supervision. Then, the following exchange occurred:

Mr. McCann: And what type of success did [Hayden] have on the chemical dependency treatment?

Ms. Foster: Mr. Hayden made an appointment and began his evaluation with chemical dependency. But he didn't complete it. He was UA'd while he was there, and when he went for it, and it came up positive for methamphetamine.

Mr. Anderson: Object, move to strike.

The Court: It's already in the record, unfortunately. We have to proceed.

Mr. McCann: Thank you, your honor. Do you know how many UAs he failed?

4

Mr. Anderson:      Object.

The Court:      What is the objection, please?

Mr. Anderson:      I think it's prejudicial for the jury to hear this kind of testimony because --

The Court:      Excuse me, may counsel come to the bench?

(Bench conference without the Court Reporter)

The Court:      The objection is sustained.

The trial then proceeded.

¶12    Detective Hansen testified during the State's case-in-chief and as a rebuttal witness. McCann impeached Albert and Sonny's trial testimony with questions regarding their earlier statements. McCann then asked Hansen about his training in assessing the believability of witnesses and how to determine if they are telling the truth. Hansen testified that he thought both Sonny and Albert had given honest statements at the time they were first interviewed. McCann directly asked Hansen if he "believe[d] Sonny was telling the truth at the time," and Hansen vouched for the veracity of the earlier statements. McCann also asked Hansen whether the earlier statements or the in-court testimony was more believable, and Hansen asserted that he thought the earlier statements were more truthful. Hayden's counsel did not object to this line of questioning by McCann.

¶13    The defense put on several witnesses who asserted that Sonny had a history of lying for the purpose of getting his father in trouble and that he may have planted the drug evidence in the house. Hayden himself testified, admitting that he had a history of using methamphetamine, but claimed he had been sober since 2004. He testified that he and

5

Sonny had an argument, but that he was just trying to discipline Sonny for drinking the night before and for being disrespectful. He denied shoving him or being abusive.

¶14   In his closing statement, McCann referred once to Hayden's urinalysis test, stating he "gave a hot UA." McCann also told the jury in his closing argument that both Foster and Hansen were "believable" and that the jury could "rely on" Hansen's testimony. McCann stated that he knew the search of Hayden's house had been conducted properly and that the officers do "good work." He also stated that he was sure all the items found in the search were related to drugs, including a scale that Hayden claimed was a carburetor float scale used on vehicles.

¶15   The jury convicted Hayden on all three counts. The District Court subsequently sentenced him to a three year deferred sentence on the drug possession count and a six month deferred sentence on each of the other two counts, to run consecutively. Hayden filed a timely appeal of his conviction.

## STANDARD OF REVIEW

¶16   We review a district court's rulings on the admissibility of evidence for abuse of discretion. *State v. Weldy*, 273 Mont. 68, 72, 902 P.2d 1, 3 (1995).

¶17   We generally do not review on appeal issues that were not raised before the district court. However, we may undertake review of such an issue under the plain error doctrine in situations that implicate a defendant's fundamental constitutional rights when failing to review the alleged error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *State v. Daniels*, 2003 MT 247, ¶ 20, 317 Mont. 331, ¶ 20, 77 P.3d 224,

¶ 20. The decision to invoke plain error review is a discretionary one that is to be used sparingly on a case-by-case basis. *State v. Rosling*, 2008 MT 62, ¶ 77, 342 Mont. 1, ¶ 77, 180 P.3d 1102, ¶ 77.

## DISCUSSION

¶18    *Issue 1: Did the District Court err by not striking Foster's testimony that Hayden had a positive urinalysis test for methamphetamine and by not giving an instruction that such testimony must be disregarded?*

¶19    Hayden argues the District Court erred when it did not grant the motion by his counsel to strike Foster's testimony that he had tested positive for methamphetamine after the alleged assault, as noted in ¶ 11 above. We discuss this issue as it may again present itself on any re-trial.

¶20    Hayden argues whether he used methamphetamine after the charges were filed in this case was evidence of another crime, wrong or act which related to his character, and, therefore, was not admissible. He also argues that the State failed to give notice of its intent to introduce evidence of other crimes, wrongs, or acts, as required by § 46-13-109, MCA, and *State v. Just*, 184 Mont. 262, 274, 602 P.2d 957, 963-64 (1979), *modified*, *State v. Matt*, 249 Mont. 136, 142, 814 P.2d 52, 56 (1991).

¶21    M. R. Evid. 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Section 46-13-109, MCA, provides:

7

(1) Except for good cause shown, if the prosecutor intends to use evidence of other crimes, wrongs, or acts pursuant to Rule 404(b), Montana Rules of Evidence, notice must be given at or before the omnibus hearing held pursuant to 46-13-110.

(2) The notice must specify the other crimes, wrongs, or acts and must include a statement as to the purpose for which the evidence is to be offered.

(3) The notice must be filed and sealed until the time of trial or until a plea of guilty or nolo contendere is entered by the defendant.

¶22 Rule 404(b) is inapplicable when a defendant presents evidence of his character by his own accord. Once the door is opened by the defendant, the State may introduce rebuttal evidence of its version of the defendant's character. *State v. Gowan*, 2000 MT 277, ¶ 23, 302 Mont. 127, ¶ 23, 13 P.3d 376, ¶ 23. If a defendant raises an issue when cross-examining a witness, the prosecution may re-examine the witness to elaborate and explain what is already in evidence. *State v. Duffy*, 2000 MT 186, ¶¶ 43-44, 300 Mont. 381, ¶¶ 43-44, 6 P.3d 453, ¶¶ 43-44.

¶23 Hayden's defense to the felony charge of possession of methamphetamine was that the drugs found in his house were not his, but Sonny's. This strategy inexorably led to evidence of Hayden's own character: that is, that he no longer used dangerous drugs because he had successfully completed drug rehabilitation treatment pursuant to a treatment plan with DPHHS. Therefore, on cross-examination, defense counsel elicited from Foster evidence that Hayden had successfully completed a drug rehabilitation program. This opened the door for the prosecution to inquire whether the treatment had truly been successful.

¶24 Once Hayden's counsel raised the topic of Hayden's successful completion of a drug rehabilitation program with Foster, the prosecutor was free to ask her on re-direct examination whether the rehabilitation program had indeed been successful in enabling

8

Hayden to cease using methamphetamine. *See Duffy*, ¶¶ 43-44. The question concerning whether Hayden had tested positive for methamphetamine after the charges were filed in this case was therefore allowable during re-direct examination. We conclude that, under the circumstances presented on this appeal, the District Court did not abuse its discretion when it did not strike Foster's statement about Hayden's positive drug test. Because we conclude that the District Court did not err by refusing to strike the testimony, there is likewise no error in its alleged failure to issue a curative instruction.

¶25 *Issue 2: Was it plain error to admit testimony that witnesses were telling the truth in their initial statements; and did the prosecutor commit plain error in his statements concerning witness credibility and his opinion of the quality of police work?*

¶26 We have consistently held that "the determination of the credibility of witnesses and the weight to be given their testimony is solely within the province of the jury." *State v. Brodniak*, 221 Mont. 212, 222, 718 P.2d 322, 329 (1986) (citations omitted). A witness may not comment on the credibility of another witness's testimony. *State v. St. Germain*, 2007 MT 28, ¶ 27, 336 Mont. 17, ¶ 27, 153 P.3d 591, ¶ 27; *State v. Hensley*, 250 Mont. 478, 481, 821 P.2d 1029, 1031 (1991).

¶27 Both the Sixth Amendment of the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee criminal defendants the right to a fair trial by a jury. A prosecutor's misconduct may be grounds for reversing a conviction and granting a new trial if the conduct deprives the defendant of a fair and impartial trial. *Clausell v. State*, 2005 MT 33, ¶ 11, 326 Mont. 63, ¶ 11, 106 P.3d 1175, ¶ 11 (citing *State v. Gray*, 207 Mont. 261, 266-67, 673 P.2d 1262, 1265-66 (1983)).

9

¶28 This Court has emphasized that it is improper for a prosecutor to offer personal opinions as to witness credibility. *Daniels*, ¶ 26; *State v. Rodgers*, 257 Mont. 413, 417, 849 P.2d 1028, 1031 (1993); *State v. Arlington*, 265 Mont. 127, 157, 875 P.2d 307, 325 (1994). We have previously concluded that it is reversible error for a prosecutor to comment directly on the credibility of witnesses. *State v. Stringer*, 271 Mont. 367, 380-81, 897 P.2d 1063, 1071-72 (1995). As we stated in *Stringer*, the "Court has been unequivocal in its admonitions to prosecutors to stop improper comments and we have made it clear that we will reverse a case where counsel invades the province of the jury." *Stringer*, 271 Mont. at 381, 897 P.2d at 1072. Likewise, the Montana Rules of Professional Conduct prohibit an attorney from "assert[ing] personal knowledge of facts in issue except when testifying as a witness." Mont. R. Prof. Cond. 3.4(e). *See also Harne v. Deadmond*, 1998 MT 22, ¶¶ 9-11, 287 Mont. 255, ¶¶ 9-11, 954 P.2d 732, ¶¶ 9-11 (reversing a verdict where an attorney "testified" in closing about his experiences with the defendant). As we have previously noted, statements by a prosecutor regarding his personal opinions are improper for the following reasons:

> (1) a prosecutor's expression of guilt invades the province of the jury and is an usurpation of its function to declare the guilt or innocence of an accused; (2) the jury may simply adopt the prosecutor's views instead of exercising their own independent judgment as to the conclusions to be drawn from the testimony; and (3) the prosecutor's personal views inject into the case irrelevant and inadmissible matters or a fact not legally proved by the evidence, and add to the probative force of the testimony adduced at the trial the weight of the prosecutors' personal, professional, or official influence.

*Stringer*, 271 Mont. at 381, 897 P.2d at 1071-72 (citing *State v. Campbell*, 241 Mont. 323, 328-29, 787 P.2d 329, 332-33 (1990)).

10

¶29    Hayden's counsel did not object at trial to McCann's questions to Hansen regarding the veracity of witness testimony, nor did he object to McCann's opinions during closing arguments regarding the credibility of witnesses and the effect of evidence. On appeal, Hayden argues that these matters constitute plain error. Although we have not previously applied the plain error doctrine in a case of prosecutor misconduct, we have explicitly left open that possibility. *Rodgers*, 257 Mont. at 419, 849 P.2d at 1032.

¶30    Based on the record before us, we conclude that plain error review is appropriate in this case. The admission of opinion evidence on the credibility of Sonny and Albert and the prosecutor's conduct implicate Hayden's constitutional rights by calling into question the fundamental fairness of the trial. *Daniels*, ¶ 20.

¶31    McCann questioned Hansen on the credibility of Sonny and Albert, eliciting his impressions of the credibility of their statements following the alleged assault. He went so far as to ask Hansen directly whether he believed Sonny was telling the truth when he was interviewed, eliciting a response that they were telling the truth in their initial statements. This line of questioning, which elicited Hansen's opinion on the credibility of other witnesses, is unacceptable and invades the province of the jury. *St. Germain*, ¶ 27; *Hensley*, 250 Mont. at 481, 821 P.2d at 1031.

¶32    The prosecutor also impinged on the jury's role by offering his own opinion as to witnesses' testimony during his closing argument. He argued that both Foster and Hansen were "believable" witnesses. These were direct statements of the prosecutor's opinion that the jury must believe these witnesses and are improper prosecutorial arguments which constitute reversible error. *Daniels*, ¶ 26; *Stringer*, 271 Mont. at 380-81, 897 P.2d at 1071-

11

72. He also stated that the jury could rely on Hansen's testimony. It is for the jury, not an attorney trying a case, to determine which witnesses are believable and whose testimony is reliable. Finally, the prosecutor improperly testified during his closing argument by vouching for the efficacy of the search of Hayden's residence and by stating his opinion that a scale found in the residence was used for drugs.

¶33 The prosecutor's conduct invaded the role of the jury, and we conclude that it created a clear danger that the jurors adopted the prosecutor's views instead of exercising their own independent judgment. The prosecutor's arguments and testimony also unfairly added the probative force of his own personal, professional, and official influence to the testimony of the witnesses. *Stringer*, 271 Mont. at 381, 897 P.2d at 1071-72. Thus, we hold that plain error is established as the record leaves unsettled the question of the fundamental fairness of the proceedings. *Daniels*, ¶ 20.

## CONCLUSION

¶34 The District Court did not abuse its discretion by not striking the testimony regarding Hayden's methamphetamine use. However, Hayden's constitutional right to a fair trial was undermined by plain error. Reversed and remanded for a new trial.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ BRIAN MORRIS
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

12