FILED

10/01/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0019

DA 22-0019

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 221N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

SACRAMENTO JUAN DOMINGUEZ, JR.,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DC-2019-19
Honorable Yvonne Laird, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Chad Wright, Appellate Defender, Alexander H. Pyle, Assistant Appellate
Defender, Helena, Montana

     For Appellee:

        Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

        Dylan J. Jensen, Valley County Attorney, Glasgow, Montana

Submitted on Briefs:  July 31, 2024

Decided:  October 1, 2024

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Sacramento Juan Dominguez, Jr., (Dominguez) appeals his convictions for three counts of incest entered in the Montana Seventeenth Judicial District Court, Valley County. We affirm in part and reverse and remand in part.

¶3 On July 26, 2018, 16-year-old A.F. moved from her mother's home in Renton, Washington, to live with Dominguez, her father, in Glasgow, Montana. Dominguez lived with his girlfriend, Chanette Nesbitt (Nesbitt), and her four children. Prior to this, A.F. had never met Dominguez. On August 12, 2018, Dominguez took A.F. camping, telling her it was an opportunity for them to bond. They packed two coolers, one sleeping bag, one blanket, some food, and one tent. They found a spot near the Vandalia Dam and set up camp.

¶4 At trial, A.F. testified that she entered the tent at around 6:00 or 7:00 p.m. A.F. recalled falling asleep around 8:00 or 9:00 p.m. while Dominguez drank liquor and smoked marijuana. During the night, A.F. woke up three separate times to Dominguez "sexually penetrating" her. She feigned sleep on each occasion. She kept track of the times of each incident based upon the ambient light outside the tent and with her phone. On the third

incident, A.F. testified Dominguez ejaculated on the back of her thighs and on a blanket. He then cleaned his semen with a shirt.

¶5 In the morning, the two packed up camp and returned to Glasgow. A.F. disclosed the abuse to Nesbitt and one of her children. She also disclosed the abuse to the police. At trial, A.F. recounted what she had told them at the time, which was consistent with her testimony. Defense counsel did not object to the elicitation of this testimony. DNA analysis performed on A.F.'s underwear returned results matching Dominguez's profile but did not return results matching A.F.'s DNA.

¶6 On re-cross examination of A.F., defense counsel questioned her recollection of the times each incident occurred based on when her phone ran out of charge. He also questioned the position of A.F.'s underwear when Dominguez ejaculated.

¶7 Dominguez testified on his own behalf. During his testimony, he claimed he and A.F. vaped his medical marijuana early in the evening of August 12, 2018. This made him tired enough to fall asleep at "8:00 or 8:30" p.m. and stay asleep until the next morning. In addition, Dominguez claimed that although A.F.'s underwear tested positive for his DNA, the underwear in fact belonged to his ex-wife and he had kept the pair for sentimental reasons. Dominguez believed the underwear contained his DNA because his ex-wife had worn them during a sexual encounter which had occurred when they were still in a relationship. The defense produced a photo of Dominguez's ex-wife wearing underwear which resembled the pair tested for Dominguez's DNA. Dominguez alleged A.F. had found the underwear in Nesbitt's home and submitted the clothing to law enforcement as

3

her own from the camping trip. On cross-examination, the State questioned Dominguez about statements he previously made to law enforcement where he did not explicitly deny having sex with A.F. because he claimed an inability to fully remember the night they camped. Dominguez did not recall the specifics of the statements he had made to the police, but denied having sex with A.F. while on the stand.

¶8 The State called Dominguez's ex-wife to rebut Dominguez's claim that the underwear belonged to her. She testified that she still possessed the underwear.

¶9 In closing, the State argued, "I want you to think about what both [A.F.] and [Dominguez] have said, look at the evidence, and make a determination as to which of them is telling the truth." The State summarized the testimonies of A.F. and Dominguez and characterized A.F.'s testimony as "consistent" and the "truth." The State further argued that it had met its burden of proof based on the DNA evidence from the underwear and that juries rely on similar evidence "all the time" and without the benefit "of an admission or [the conduct] being on camera." Defense counsel did not object to these statements or any other aspects of the State's closing argument. The jury found Dominguez guilty on all three counts of incest.

¶10 On April 28, 2021, the District Court imposed three concurrent sentences of sixty years each to the Montana State Prison, with ten years of each sentence suspended. Additionally, the District Court imposed conditions on Dominguez, including, relevant here, restrictions governing his access to and use of technology. On appeal, Dominguez objects to condition 43, which requires Dominguez obtain permission from the Montana

Department of Correction's Adult Probation and Parole Bureau (Probation and Parole Bureau) before accessing the internet; condition 44, which requires Dominguez obtain permission from the Probation and Parole before possessing any device capable of accessing the internet; and condition 51, which prohibits the possession of a smartphone.

¶11　Dominguez argues he was denied his right to a fair and impartial trial, alleging the prosecutor impermissibly shifted the burden of proof and bolstered A.F.'s credibility by introducing inadmissible prior consistent statements. Further, he contends his trial counsel was ineffective for failing to object to these errors. In the alternative, he argues the District Court abused its discretion by imposing restrictions on his internet use at sentencing. We address these issues in turn.

¶12　Defense counsel did not object to the State's closing arguments. This Court generally will not address issues of "prosecutorial misconduct pertaining to a prosecutor's statements not objected to at trial." *State v. Lawrence*, 2016 MT 346, ¶ 6, 386 Mont. 86, 385 P.3d 968 (citation omitted). "However, we may exercise our discretion and review such issues under the plain error doctrine." *Lawrence*, ¶ 6; *see also State v. Aker*, 2013 MT 253, ¶ 21, 371 Mont. 491, 310 P.3d 506; *State v. Lacey*, 2012 MT 52, ¶ 14, 364 Mont. 291, 272 P.3d 1288; *State v. Hayden*, 2008 MT 274, ¶ 17, 345 Mont. 252, 190 P.3d 1091. "The plain error doctrine is to be used sparingly, and only on a case-by-case basis." *Lawrence*, ¶ 6 (citing *Hayden*, ¶ 17). "The purpose of the plain error doctrine is to correct an error not objected to at trial that affects the 'fairness, integrity, and public reputation of judicial proceedings.'" *Lawrence*, ¶ 9 (quoting *State v. Finley*, 276 Mont. 126, 134, 915 P.2d 208,

213 (1996) *overruled on other grounds State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817).

¶13 "If a prosecutor's improper comments prejudice a defendant's right to a fair trial, then the proper remedy is reversal." *State v. Lindberg*, 2008 MT 389, ¶ 25, 347 Mont. 76, 196 P.3d 1252 (quotation omitted). Determining whether improper comments prejudiced a defendant requires a two-step analysis. *Lindberg*, ¶ 25. "First, we determine whether the prosecutor made improper comments." *Lindberg*, ¶ 25 (citations omitted). "Second, we determine whether those comments prejudiced the defendant's right to a fair and impartial trial." *Lindberg*, ¶ 25 (citations omitted). The defendant has the burden to demonstrate that a prosecutor's improper comments, viewed in the context of the case in its entirety, prejudiced their right to a fair and impartial trial. *State v. Wing*, 2008 MT 218, ¶ 33, 344 Mont. 243, 188 P.3d 999.

¶14 Dominguez argues the State's closing argument diluted the State's burden of proving the elements of the offense beyond a reasonable doubt. Due process "protects the accused against conviction except upon proof beyond a reasonable doubt." *State v. Favel*, 2015 MT 336, ¶ 25, 381 Mont. 472, 362 P.3d 1126 (citing *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 1072-73 (1970)). Toward this end, Dominguez alleges that the State's assertion that "People get convicted of this sort of offense all the time without that evidence" further diluted the reasonable doubt standard by referring to facts not supported by evidence introduced at trial. A "prosecutor may not assert or comment on facts not in evidence." *State v. Miller*, 2022 MT 92, ¶ 23, 408 Mont. 316, 510 P.3d 17 (citations

omitted). Here, when viewed in the context of the entire argument, we conclude the State's comments were an articulation of the standard of proof the jury would need to reach to convict, not a dilution of that standard.

¶15 Turning to Dominguez's claim that the State in its closing argument improperly commented on the veracity of A.F., we conclude the statements, while troubling, are not fatal to the State's case. "'Any trial counsel who invades the province of the jury by characterizing a party or witness as a liar or his testimony as lies, is treading on thin ice.'" *Lindberg*, ¶ 34 (quoting *State v. Arlington*, 265 Mont. 127, 158, 875 P.2d 307, 325 (1994)); *see also* Mont. R. Prof. Cond. 3.4(e) (a lawyer shall not "state a personal opinion as to . . . credibility of a witness."). In *Lindberg*, we observed the prosecutor made improper statements addressing the truthfulness of the State's witnesses. *Lindberg*, ¶¶ 18, 34. However, there we declined to reverse the verdict for plain error because the comments "did not have the effect of unconstitutionally shifting the burden of proof to" the defendant "given the totality of the circumstances." *Lindberg*, ¶ 35. The prosecutor offering "personal opinions" on both "the credibility of witnesses" and the defense's presentation of evidence did not result in a miscarriage of justice considering the record reviewed in its entirety. *Lindberg*, ¶ 35.

¶16 Here, the State's comments to the jury that they "could rely on [A.F.]," that A.F. told "the truth" on the stand, and that Dominguez was "willing to be deceptive" unquestionably risked invading the province of the jury. Nonetheless, we conclude that these statements occurred in the larger context of an ultimately acceptable closing

7

argument addressing "conflicts and contradictions in testimony" and suggesting "to the jury inferences which may be drawn therefrom." *State v. Gladue*, 1999 MT 1, ¶ 15, 293 Mont. 1, 972 P.2d 827. We also note the substantial and credible evidence produced by the State of Dominguez's guilt.

¶17 Dominguez additionally alleges the admission of A.F.'s prior consistent statements impermissibly bolstered her credibility before the jury. The State may not, in general, bolster a witness's credibility with prior consistent statements. *State v. Scheffelman*, 820 Mont. 334, 340, 250 P.2d 1293, 1297 (1991). However, here, A.F.'s testimony also related to the chain of custody of the physical evidence gathered by A.F., the progress of the investigation, and A.F.'s then-state of mind. Furthermore, the statements rebutted the defendant's impeachment of A.F.'s credibility.

¶18 Based on the foregoing, we decline to invoke plain error review.

¶19 Ineffective assistance of counsel claims involves questions of law and fact which we review de novo. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861. The right to counsel is guaranteed to criminal defendants by the United States Constitution and the Montana Constitution. U.S. Const. amend. VI; U.S. Const. amend. XIV; Mont. Const. art. II, § 24. To succeed on an ineffective assistance of counsel claim, the defendant must prove two elements. *Whitlow*, ¶ 10 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). First, the defendant must prove that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, the defendant must prove that this deficient performance prejudiced their case. *Strickland*, 466 U.S. at 687,

8

104 S. Ct. at 2064. If the defendant fails to satisfy one of the *Strickland* prongs, there is no need to address the other prong. *Whitlow*, ¶ 11; *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601. An attorney's performance is measured for deficiency by "whether counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20. When addressing ineffective assistance of counsel claims on direct appeal, we must first consider whether the claims are record based. *Aker*, ¶ 34. This Court must be able to determine why defense counsel performed in a particular manner based on the record alone. "If the claim is based on matters outside the record, [we] will refuse to address the issue on appeal." *State v. Kougl*, 2004 MT 243, ¶ 14, 323 Mont. 6, 97 P.3d 1095.

¶20 On appeal, Dominguez argues the failure of his trial counsel to object to the prior consistent statements and to the States's closing argument rendered his counsel ineffective. Having determined the prosecution did not impermissibly dilute the reasonable doubt standard, we only address Dominguez's claims that his trial counsel's lack of objections to the introduction of prior consistent statements failed to meet the *Strickland* test.

¶21 "Counsel's use of objections lies within his or her discretion." *Aker*, ¶ 36 (citation omitted). Differing strategic choices cannot be the basis of an ineffective assistance of counsel claim. *Riggs v. State*, 2011 MT 239, ¶ 53, 362 Mont. 140, 264 P.3d 693 (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2052). Here, it is plausible that defense counsel did not object to the introduction of prior consistent statements because his strategy relied

9

on impeaching A.F. on these same statements. Indeed, on cross examination, defense counsel attempted to discredit A.F. with questions related to possible drug use during the camping trip, her certainty of the times of the three incidents, and where Dominguez had ejaculated. At closing, defense counsel reiterated these questions and further questioned whether the underwear belonged to A.F., as she testified, or had belonged to Dominguez's ex-wife, as Dominguez claimed and his ex-wife refuted. Accordingly, we conclude the alleged error is not based on information contained within the record and that it is not appropriate to consider on appeal.

¶22 Finding that the prosecution's statements and admission of A.F.'s prior consistent statements do not warrant plain error review and Dominguez's claim of ineffective assistance of counsel is not reviewable on direct appeal, we affirm his conviction on the three counts of incest. We turn now to whether the District Court abused its discretion by imposing restrictions on Dominguez's internet use.

¶23 This Court reviews "a condition imposed in a criminal sentence for legality—whether the sentence is within statutory parameters." *State v. Johnson*, 2023 MT 143, ¶ 6, 413 Mont. 114, 533 P.3d 335 (citation omitted). "If we determine sentence conditions are legal, we review the reasonableness of the conditions or restrictions imposed on the sentence for abuse of discretion." *Johnson*, ¶ 6 (citations omitted). "An abuse of discretion occurs when a district court acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *Johnson*, ¶ 6 (citations omitted).

¶24 Under Montana law, the sentencing judge is authorized to "impose on the offender any reasonable restrictions or conditions during the period of the deferred imposition or suspension of sentence," including "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society." Section 46-18-201(4)(p), MCA. We will reverse "overly broad or unduly punitive" restrictions or conditions with no nexus or an exceedingly tenuous nexus with the underlying offense. *Johnson*, ¶ 6 (citations omitted).

¶25 In *Johnson*, we concluded that three of the 47 sentencing conditions imposed went "beyond what is reasonably related" to the defendant's criminal conduct. *Johnson*, ¶ 9. Like the conditions here, Johnson could not access the internet absent the permission of the Probation and Parole Bureau; was prohibited from possessing any unauthorized device capable of accessing the internet; and was prohibited from possessing a smart phone with "photo, video, or [i]nternet capabilities" under any circumstances. *Johnson*, ¶ 4. There we ruled that these conditions "fail to consider the multiple legitimate purposes for internet usage" and may indeed "impair Johnson's ability to comply with the other terms of his probation," such as securing employment "given the hybrid and connected nature of work." *Johnson*, ¶ 13. In *Johnson*, we remanded to the district court with instructions to modify the conditions to allow for broader use of internet-capable devices for Johnson to participate in legitimate activities while still subject to monitoring by the Probation and Parole Bureau. Johnson was allowed to possess a smart phone, subject to the same restrictions and monitoring as his other devices. *Johnson*, ¶¶ 13-14.

11

¶26 Here, the three conditions of Dominguez's sentence are a verbatim copy of the conditions reversed as overbroad in *Johnson*. As the State concedes, *Johnson* was decided in July 2023, well after the District Court here imposed its sentence on Dominguez. With no meaningful distinction between this case and *Johnson*, we agree with both parties and remand to the District Court to amend conditions 43, 44, and 51 of Dominguez's sentence to be consistent with our opinion in *Johnson*.

¶27 We affirm Dominguez's convictions on three counts of incest. We remand the matter of his sentencing conditions to the District Court for modification pursuant to this opinion.

¶28 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶29 Affirmed in part, reversed and remanded in part.

/S/ LAURIE McKINNON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE